CHARLES M. WASHINGTON et al., Plaintiffs, *v.* RICHARD R. WRIGHT, JR., et al., Defendants.

Supreme Court, Special Term, New York County, December 2, 1946.

*Bernard R. Lieberman* for plaintiffs.

*Charles Pokorny* for Richard R. Wright, Jr., defendant.

DICKSTEIN, J. In this action, plaintiffs seek an injunction against Bishop Wright, a bishop of the African Methodist Episcopal Church (hereinafter called the " Church "), from acting as the presiding bishop over the New York Annual Conference of that Church. Defendant counterclaims for injunctive relief restraining plaintiffs from interfering with the performance of his duties as bishop over the New York Annual Conference.

An understanding of the determinative facts renders necessary an outline of the administrative structure of the Church. The Church was organized in Philadelphia in 1816. Divided into seventeen episcopal districts, each district is presided over by a bishop. Individual districts are composed of several annual conferences. The First Episcopal District consists of the following Conferences: Philadelphia, New Jersey, New York, New England, Delaware, Bermuda and the Maritime Conferences.

The rules for the government of the church are contained in the Book of Discipline. The supreme governing authority of the Church is the General Conference, which meets every four years. The General Conference is composed of bishops, clergymen, laymen and other duly elected delegates.

Under the Book of Discipline, the Bishops' Council, which meets semiannually, is given " authority to regulate all affairs and have full supervision over the entire church during the interim of the General Conference " (§ 172). Among the powers granted the Bishops' Council is that of hearing " complaints and petitions against anyone of their number " and " to remove or transfer a Bishop, by two-thirds vote, from a District, if the good of the church demands it, or give such directions as they in their judgment deem best " (§ 173).

Plaintiff Sims, in 1939, was selected by the then presiding bishop of the First Episcopal District to act as an associate bishop. Sims was assigned as presiding bishop of that district in 1940, and reassigned by the General Conference in 1944 for a further period of four years. During his term of office, a number of legal actions were commenced against him, and there had been complaints about his administration of the First District. In the instant action, the court is not concerned with the truth or falsity of the accusations levelled against Sims. The resolution of that question rests with the proper church authorities.

What is presented here is the issue of the power of the Bishops' Council to take action against Bishop Sims, and the interpretation of the means used to exercise that power.

On June 5, 1946, at a meeting of the Board of Women's Missionary Society, in New York, twelve bishops of the Church there present were asked to consider petitions by complainants against Sims. Since that meeting was not a regularly convened meeting of the Bishops' Council, opposition on that score by Sims to any consideration of the complaints, was sustained. Nevertheless, informally, the complainants were heard. At the conclusion of the meeting, on June 6, 1946, ten bishops signed a written recommendation, wherein they stated that " in view of the confusion and general unrest which have been from time to time reported to the Bishops' Council, it is the collective judgment and will of the undersigned Bishops here assembled, that the presiding Bishop David Henry Sims of the First Episcopal District shall be relieved of further supervision of the New York Annual Conference * * * " (plaintiff's Exhibit 3).

The Bishops' Council held a regular session in Kansas City, Kansas, on June 21, 1946, which was attended, in person, by fifteen out of the sixteen bishops of the church, and the sixteenth was represented by proxy. The situation in the New York Conference was examined at some length during that meeting, and

both sides were heard by the council. By a vote of fifteen to one, the council adopted a resolution (defendant's Exhibit C) which reads as follows: " In view of the fact that it is the judgment of the bishops that there should be a change in the administration of the New York Annual Conference the Bishops' Council hereby appoints a bishop as associate of that conference with the understanding that the said associate bishop shall have full authority to act in the New York Annual Conference. Bishop R. R. Wright, Jr., assigned to New York." Plaintiff, Sims, was one of those who signed the foregoing resolution.

Bishop Wright immediately assumed the duties of bishop of the New York Conference. This action for an injunction was commenced soon after, and a temporary restraining order was granted enjoining defendant Wright from acting.

A special meeting of the Bishops' Council was called for August 15, 1946, at Washington, D. C., in order to clarify the situation in New York in view of the granting of the temporary injunction herein. A discussion arose there as to the minutes of the meeting of June 21, 1946. Those minutes were corrected after a committee had been appointed for that purpose. An attempt was also made by some bishops to have their names withdrawn from the resolution of June 21, 1946.

Before deciding the effect of the resolution of June 21, 1946, it is essential to determine whether the Bishops' Council had the power to relieve Sims of his duties as Bishop of the New York Conference and to appoint Wright in his place. Plaintiffs urge that in view of the serious nature of the accusations against Sims, the exclusive method of trial upon those charges is contained in chapter I of part 6, page 258, of the Book of Discipline. It is there provided that, if in the interval of the General Conference, a bishop is accused of certain offenses, the mode of trial of the bishop shall be as follows: The presiding elder of the district shall notify the senior bishop, who shall appoint a committee of trial, composed of one bishop and four elders. The accusation must be sent to the Secretary of the Bishops' Council and the senior bishop who shall furnish specifications of the charges to the accused at least thirty days before the meeting of the General Conference. The bill of complaint must be placed in the accused's hands at least one week before the date set for trial.

The Book of Discipline has imposed the responsibility for the conduct and administration of the Church in the Bishops' Council during the interim of the General Conference. The

powers given to the Bishops' Council are broad, and necessarily should be so. The power to remove a bishop, by two-thirds vote, is specifically given to the council in the Book of Discipline. The court does not construe the chapter on trial of bishops, relied upon by plaintiffs, as the exclusive method to be used. The Book of Discipline provides for two forms of procedure, either of which may be employed. Sims was not denied any rights when the Bishops' Council decided to use one of the alternate methods of removal, instead of the concurrent procedure of trial by a bishop and elders. To hold otherwise would require the court to ignore the express provisions of the Book of Discipline regarding the powers of the Council of Bishops. The existence of concurrent methods of removal is not a novel situation. Only recently in *Matter of Sacharoff* v. *Corsi* (294 N. Y. 305) the Court of Appeals approved the use of alternate procedures which were contained in different statutes.

*Sullivan* v. *McFetridge* (183 Misc. 106, affd. 268 App. Div. 962) cited by plaintiffs has no application. There the court found that the executive board of the international had no original jurisdiction to try charges against the president of a local. The exclusive remedy was not being pursued. That defect in jurisdiction resulted in injunctive relief. In the instant case, however, two different methods are expressly provided for in the organic law of the Church.

Having concluded that power resided in the Bishops' Council to remove Sims from the New York Conference, there remains the issue of whether the resolution of June 21, 1946, was intended to, and effectively did, accomplish that purpose. Testimony was adduced by both sides as to the intent of the resolution of June 21, 1946 (defendant's Exhibit C). No point is served in setting forth in detail the conflicting evidence. The language of the resolution, in view of the events that preceded it, must be construed to have intended an ouster of Sims from his position as presiding Bishop of the New York Conference. To conclude with plaintiffs, that all the Bishops' Council accomplished in its meeting at Kansas City was to appoint an associate bishop to act under the supervision of Sims in the New York Conference, would require a total disregard of the entire background against which the action was taken. Plaintiffs have attempted to seize upon the purposely diplomatic language of the resolution to emasculate it entirely.

The resolution commences with the judgment of the bishops " that there should be a change in the administration of the New York Annual Conference.'' If as plaintiffs contend, the

appointment of an associate bishop did not diminish Sims' authority in the New York Conference, there obviously could be no change in the administration of that conference. In fact, Sims himself testified that he could have appointed an associate bishop without the action of the Bishops' Council. Furthermore, the use of the expression " change in administration " must be superimposed upon the background of the June 21st meeting. The Bishops' Council at that meeting had been presented with the signed recommendation of ten Bishops asking that Sims " be relieved of further supervision of the New York Annual Conference ". Nothing in the record convinces the court that the Bishops' Council intended anything but to give effect to that recommendation. The evidence establishes that the language of the resolution of June 21, 1946, was deliberately phrased in its present form in order to soften the blow to Sims so that his usefulness in the remainder of the First Episcopal District would not be completely destroyed. This face-saving device cannot be distorted into an exculpation.

Further substantiation of defendant's position as to the meaning and effect of the resolution of June 21, 1946, is found in the use of the words " with full authority to act in the New York Conference." If plaintiffs are correct, the words " full authority " are meaningless. But those words should be given their obvious interpretation. A reasonable construction is consistent only with the conclusion that the appointment of defendant Wright invested him with the full and exclusive power of a presiding bishop in the New York Conference. It is the court's conclusion that not only did the Bishops' Council have power to relieve Sims of his duties in the New York Conference but, that on June 21, 1946, the power was properly and effectively exercised and defendant Wright was appointed in the place of Sims to act in the New York Conference.

Nothing which occurred at the meeting of the Bishops' Council in Washington, D. C., on August 15, 1946, changed the force and effect of the action taken on June 21, 1946. Any possible doubt as to what steps had been taken on June 21, 1946, was dissipated by the correction of the minutes of that meeting by the council on August 15, 1946. After the correction of the minutes, certain bishops at the August meeting stated that they wished to withdraw their votes and signatures given on June 21, 1946. The court finds that these bishops did not, and could not, withdraw their votes and signatures theretofore given. Action had already been taken as a result of the resolution of June 21st. Defendant Wright became vested with his office

upon his appointment upon that date. Withdrawal of a sufficient number of signatures and votes would reduce the remainder to less than the two-thirds vote necessary to have effectuated the action of the Bishops' Council on June 21st. By such indirect means, defendant Wright could be removed from office without the two-thirds vote necessary for his removal. Testimony was adduced as to the reasons which prompted the attempted withdrawal. The court, for the purposes of the decision in this case, need not determine whether the motives were good or bad. It is sufficient to find that the attempted withdrawal was prevented, and furthermore could not legally affect the validity of the June 21st resolution.

In view of the above it is the court's decision that the complaint must be dismissed, and judgment granted defendant upon the counterclaim asking for injunctive relief. The temporary injunction heretofore granted is dissolved. The above constitutes the decision of the court in accordance with section 440 of the Civil Practice Act. Settle judgment accordingly.