MARY WAGNER, Appellant, *v.* D. WARD NICHOLS, as Presiding Bishop of the First Episcopal District of the African Methodist Episcopal Church, et al., Respondents.

First Department, February 18, 1958.

*Bernard R. Lieberman* of counsel (*Bernard Greenbaum,* attorney), for appellant.

*Richard E. Carey* for respondents.

STEVENS, J. This is an appeal from a judgment dismissing the complaint in an action to recover a partial default in payment on four promissory notes. It was dismissed at the close of the evidence, defendants having offered no proof.

The question presented for review is whether the trial court committed error in some of its rulings and whether there was authority for the maker to execute and deliver the notes.

On June 25 and 27, 1946, David H. Sims executed four promissory notes in favor of Bernard R. Lieberman. The notes were signed: " First Episcopal District of the African Methodist Episcopal Church—David H. Sims Presiding Bishop ".

The First Episcopal District is one of 17 subdivisions of the African Methodist Episcopal Church, each district presided over by a Bishop. The governing body of the Church is the General Conference which is comprised of delegates from the 17 districts. Each district is further subdivided into several Annual Conferences. The Bishop of the district is also the ex officio presiding official of each Annual Conference within his district. An Annual Conference is comprised of representatives of the various Methodist Episcopal Churches within a designated area. The rules and laws of the Church are published in an official manual known as the Doctrine and Discipline of the African Methodist Episcopal Church.

Prior to the execution of the notes in issue, on June 21, 1946, the General Conference of the Church, by resolution, had removed David H. Sims, who was then Presiding Bishop for the First Episcopal District, as Bishop of the New York Annual Conference, a subdivision of the First District. However, there was nothing in the resolution to affect his tenure as Bishop of the First District. This removal was the subject of litigation and the resolution was subsequently affirmed by the New York State Supreme Court. (*Washington* v. *Wright,* 188 Misc. 28.)

The present action was instituted on July 28, 1948 against the First Episcopal District of the Church and against the six-member Annual Conferences which comprised the district.

Only the present Presiding Bishop was served in his representative capacity.

The plaintiff claims that the authority for the issuance of the notes is the general authority granted to Bishops to administer the affairs of their respective districts as provided in the Book of Discipline. The plaintiff further contends that subsequent to the issuance of the notes, the First Episcopal District, in conference, ratified Bishop Sims' actions.

At the trial the court properly dismissed, as premature, the action against the six-member Annual Conferences on the authority of section 16 of the General Associations Law (*Flagg* v. *Nichols,* 307 N. Y. 96); there remained only the action against the defendant First Episcopal District.

After the plaintiff rested, the trial court, relying upon the decision in *Washington* v. *Wright* (*supra*) found that Bishop Sims was not the Presiding Bishop of the First Episcopal District at the time the notes were issues and accordingly dismissed the complaint. However, the *Washington* case merely affirmed the removal of the Bishop as Presiding Officer of the New York Conference, a subdivision or member of the First Episcopal District. There is no evidence that Bishop Sims had been removed as leader of the First District since his appointment in 1940. Nevertheless, while the trial court may have misconstrued the holding in the *Washington* case, there is a sufficient showing of lack of authority on the part of the Bishop to sustain the court's finding.

Although there is a presumption of validity of a negotiable instrument which appears to be regular on its face (11 C. J. S., Bills and Notes, § 652) the plaintiff chose by the pleadings and bills of particulars to place the authority of the Bishop in issue.

Section 38 of the Negotiable Instruments Law states: " The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

The authority to make or indorse negotiable paper is subject to strict interpretation and must be strictly construed. The power will be construed as extending only to papers executed or indorsed in the business of the principal and for his benefit. (*Eldridge* v. *Husted,* 24 Misc. 177.) This is particularly true where the agency sought to be held is a nonprofit association. (*McCabe* v. *Goodfellow,* 133 N. Y. 89; *Davis* v. *Young,* 9 Misc 2d 209.)

Bishop Sims testified that the promissory notes were issued to Lieberman partially for legal services. However, even a liberal reading of the Book of Discipline fails to reveal any authority for the issuance of notes by the Bishop or for his incurring of liability for legal services on behalf of the Church. Moreover, section 138 of article VII of the Book of Discipline expressly provides that the fiscal affairs of the Church shall be administered by the Finance Committees of the various Annual Conferences. This would tend to contradict the testimony that it had been the custom in the past to permit the Bishop to contract obligations on behalf of the Church. Nor does there appear to be any substantial evidence of subsequent ratification by the First Episcopal District Conference.

Lastly, it is questionable whether the legal services for which the obligation was incurred were personal or for the benefit of the Church.

"An agent cannot bind his principal, even in matters touching his agency, where he is known to be acting for himself, or to have an adverse interest." (*Manhattan Life Ins. Co.* v. *Forty-Second St. & Grand St. Ferry R. R. Co.*, 139 N. Y. 146, 151.)

The plaintiff has failed to show any direct authority by the members of the association to permit the Bishop to incur any obligation on their behalf. In *McCabe* v. *Goodfellow* (133 N. Y. 89, 94–95, *supra*) the court said: "We fail to discover anything in the organization of this association, or in its constitution, or professed objects, or in the methods which it adopted for the conduct of its affairs, which indicates an intention on the part of these members to become personally bound for any debts contracted by its officers and committees beyond what might be necessary for the maintenance of its existence. * * * and no authority was given to any officer, agent or committee of the association, to pledge without limit the personal credit of its members."

Where a signature on a negotiable instrument is made without authority, there is no right to enforce payment thereon against any party thereto. (Negotiable Instruments Law, § 42.)

Accordingly, the judgment appealed from should be affirmed, with costs to respondents.

BOTEIN, P. J., BREITEL, RABIN and FRANK, JJ., concur.

Judgment unanimously affirmed, with costs of the appeal to the respondents.