Gladys STRANN, Plaintiff,

v.

The UNITED STATES, Defendant,

and

Chemical Bank, and Joseph G. Glass and William Everett Glass, Third-Party Defendants.

No. 95–81T.

United States Claims Court.

June 30, 1983.

As Amended July 8, 1983.

---

Albert W. Cornachio, Bronxville, N.Y., for plaintiff.

Ellen C. Specker, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SETO, Judge:

This tax case is before the court on defendant's motion for summary judgment. Defendant seeks a judgment ordering that plaintiff failed to meet the conditions set forth in 31 U.S.C. § 562, which would allow her to recover a replacement check for funds misappropriated by a law firm which endorsed her tax refund check without authorization. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

In order to qualify for a replacement check, the plaintiff must satisfy each of the requirements set forth under 31 U.S.C. § 562.[1] *Koch v. Secretary of U.S. Dept. of Health, Education and Welfare,* 590 F.2d 260–261 (8th Cir.1978). Section 562 states:

Whenever it is established (a) that any check heretofore or hereafter drawn on the Treasurer of the United States has been lost or stolen, without the fault of the payee or a holder who is a special indorsee and whose indorsement is neces-

sary to the further negotiation of such check, (b) that such check has thereafter been negotiated and paid by the Treasurer on a forged indorsement of the payee's or special indorsee's name, (c) that the payee or special indorsee has not participated either directly or indirectly in the proceeds of such negotiation or payment, and (d) that reclamation from the forger or transferees or parties on such check subsequent to the forgery has been or may be delayed or be unsuccessful, the Treasurer of the United States is authorized and directed to draw on the fund prior to reclamation to pay such payee or special indorsee the amount of such check, without interest.

On the basis of facts conceded for the purpose of this motion, defendant contends that plaintiff, by having her refund check mailed to the law firm's address, gave the law firm apparent authority to endorse the check as her agent. Therefore, defendant argues that no forgery occurred under subsection (b) as a matter of law or, alternatively, that plaintiff was at "fault" for the misappropriation under subsection (a) of the statute. This court must consider two issues in order to dispose of this motion:

(1) whether "forged endorsement" within 31 U.S.C. § 562 includes an unauthorized endorsement which purports to be made in a representative capacity; and

(2) whether designation of a law firm to receive a federal tax refund check on behalf of a client taxpayer gives the law firm apparent authority to endorse the checks, thereby precluding forgery.

Plaintiff petitions this court to find that the issues of forgery and fault are questions of fact, which must be decided at trial through the evidence adduced. She asserts that having her refund check sent to her law firm's address, does not establish fault under 31 U.S.C. § 562, and that the term

1. Congress reenacted Title 31 of the United States Code, "Money and Finance," without substantive change pursuant to Pub.L. No. 97–258 (Sept. 13, 1982). 31 U.S.C. § 562 is now codified as new Section 3343(b).

"forged endorsement" within section 562 encompasses unauthorized endorsements purportedly made in a representative capacity.

Upon evaluating the scope of section 562 in light of its remedial purpose, its legislative history, and other indicia of legislative intent, this court concludes that the terms "fault" and "forged endorsement" under that statute must be construed broadly, as asserted by plaintiff.

## FACTS

The plaintiff's claim for a replacement check arose in the following circumstances. Plaintiff retained the New York law firm of Glass & Glass in 1973, to handle matters pertaining to the estate of her recently deceased husband. In June 1974, the firm received a 90-day extension from the Internal Revenue Service (IRS) to file the decedent's federal estate tax return, and sent the IRS a $20,000 check, which the plaintiff had provided the firm as a credit against taxes owed. Plaintiff filed the return in December 1974, showing a net estate tax of $4,097.16. The return bore plaintiff's signature as "executor, administrator or person in possession of property," as well as Mr. William Glass' signature, on behalf of the law firm, as preparer. Plaintiff's address, as reflected on the return, was "c/o Glass and Glass" at the law firm's address. The IRS assessed a tax liability of $3,656.26 against the decedent's estate and sent a check to the address indicated on the plaintiff's return, representing the difference between the $20,000 credit and this liability. The United States Treasury Department issued the check to the order of plaintiff in her capacity as executrix of her husband's estate.

Plaintiff, however, never received her check and filed a claim under section 562 for a replacement check in February 1979. An investigation conducted by the Treasury determined that the law firm endorsed the check "Gladys Strann, E/O Saul Strann, Glass and Glass, Spec." and deposited the proceeds in its client trust bank account at Chemical Bank.

Treasury refused to issue a replacement check asserting there was no "forgery", since the law firm had "apparent authority" to endorse checks on behalf of the plaintiff. The bank refused the Treasury's demand for reclamation under 31 C.F.R. § 240 on the same grounds. Plaintiff sued the United States for a replacement check in the United States District Court for the Southern District of New York. However, the district court determined that it lacked subject matter jurisdiction because plaintiff's claim against the United States exceeded $10,000 and did not sound in tort. 28 U.S.C. § 1491 (Supp. III 1979); see Atkins v. United States, 556 F.2d 1028, 1036 (Ct.Cl.1977), cert. denied, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). Consequently, the district court ordered this action be transferred to the United States Claims Court pursuant to 28 U.S.C. § 1406(c).

Defendant subsequently impleaded Chemical Bank,[2] alleging that it had breached its warranties of presentment and endorsement since plaintiff's endorsement was either forged or unauthorized. The bank, in turn, entered a claim against the law firm on the grounds that the law firm breached its warranties of transfer and presentment made to the bank, and that it should assume any liability imposed on the bank.

## DISCUSSION

Because resolving the issues presented by the government's motion requires construing section 562, the principles of statutory construction which guide our analysis must be set forth at the outset. "[I]n all cases involving statutory construction, [the] starting point must be the language employed by Congress." American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citing, Reiter v. Sonotone Corp., 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931

---

**2.** However, the sole issue before this court is whether to grant the summary judgment motion entered by the United States on plaintiff's petition.

(1979). The plain meaning of section 562, as well as the definition of the terms "forgery" and "fault", must assume a prominent role in our analysis. Generally, courts construe statutory terms in their ordinary sense. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citing, *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Deviations from the ordinary meaning of section 562 should be avoided particularly, since claims under this section involve waivers of sovereign immunity. *See Flora v. United States,* 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958).

▪ Ascertaining the meaning of section 562 requires considering other indications of legislative intent as well. The Supreme Court has noted that "circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). In this regard, the remedial nature of section 562 must also be considered in construing the terms "fault" and "forgery". Moreover, section 562 is indeed remedial insofar as it provides relief otherwise unavailable to private parties. *Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *United Steelworkers v. Weber,* 443 U.S. 193, 202, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979). Congress designed section 562 to provide prompt recoveries to payees of lost or stolen Treasury checks. H.R.Rep. No. 1113, 77th Cong., 1st Sess. (1941); S.Rep. No. 796, 77th Cong., 1st Sess. (1941). The House Report noted:

> The purpose of this proposed legislation is to relieve the inequitable condition arising when the payee or a special endorsee of a check drawn on the Treasurer of the United States, which has been improperly negotiated through no fault of the payee or special endorsee and paid upon a *forgery of his endorsement,* is deprived of the amount due him until such indeterminate future time as recovery has been effected from the forger or the bank or

other party cashing the check ... [Emphasis supplied] [H.R.Rep. No. 1113, 77th Cong., 1st Sess. 2 (1941)].

To achieve the above-quoted purpose, Congress established a check-forgery insurance fund from which payments could be made to payees in advance of their reclamation of the lost funds. In addition, a remedial statute ordinarily is construed generously to further its primary purpose, *Gomez* 446 U.S. at 639, 100 S.Ct. at 1923, even if doing so requires interpreting terms broader than their common-law meanings allow. *N.L.R.B. v. Hearst Publications,* 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944).

However, the remedial nature of section 562 does not necessarily mean that it applies to every situation in which a person loses a check which another subsequently cashes. "The legislature does not ... merely enact general policies. It also defines the 'sphere within which the policy is to have effect.'" *Moragne v. States Marine Lines,* 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970). Thus, Congress often acts to remedy only part of a broader problem. *Fullilove v. Klutznick,* 448 U.S. 448, 485, 100 S.Ct. 2758, 2778, 65 L.Ed.2d 902 (1979).

It is therefore incumbent that this court evaluate the scope of the remedies within section 562, in view of its legislative history, as well as other indicia of legislative intent. In determining the issues of statutory interpretation presented by the government's motion, we must also consider both the common-law meaning of the relevant statutory terms and the remedial policies underlying section 562.

▪ We turn first to whether an unauthorized endorsement purportedly made in a representative capacity constitutes a forgery. The common-law crime of forgery does not include circumstances, such as those involved in the case at bar, in which a person endorses an instrument on behalf of another and misrepresents his authority. *Gilbert v. United States,* 370 U.S. 650, 658, 82 S.Ct. 1399, 1403, 8 L.Ed.2d 750 (1962); *see* 36 Am.Jur.2d *Forgery* § 10 (1968 and 1982 Supp.), 37 C.J.S. *Forgery* § 1 (1943 and

1978 Supp.). Thus, common law distinguishes circumstances in which a person signs an instrument purporting to act on behalf of another, from situations in which a person signs the name of another in a manner which deceives others into believing that the signature is genuine. *Gilbert,* 370 U.S. at 658, 82 S.Ct. at 1403. The distinction's basis lies in the historical development of the crime of forgery as a device for protecting the integrity of commercial instruments. *United States v. Wilkins,* 213 F.Supp. 332 (S.D.N.Y.1963), *aff'd* 328 F.2d 120 (2d Cir.1964). Inasmuch as a person purporting to sign an instrument in a representative capacity does not deceive anyone concerning the source of the signature, he does not commit common-law forgery.

■ While the term "forgery" has been interpreted in its common-law sense within various federal criminal statutes, *Gilbert,* 370 U.S. at 658, 82 S.Ct. at 1403; *United States v. Jones,* 553 F.2d 351 (4th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064 (1977); *Marteney v. United States,* 216 F.2d 760, 763 (10th Cir.), *cert. denied,* 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1954); *Wright v. United States,* 172 F.2d 310, 311 (9th Cir.1949); *but see United States v. Wilkins,* 213 F.Supp. 332 (S.D.N.Y. 1963), *aff'd,* 328 F.2d 120 (2d Cir.1964), the remedial nature of section 562 suggests that the term "forgery" deserves a broader interpretation than it receives under criminal statutes or the common law. Common-law distinctions should not govern statutory interpretation of a remedial statute if they would frustrate its underlying policies. *NLRB v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). Therefore, "forgery" in its common-law sense must be reconciled with the underlying remedial nature of section 562. Otherwise, the statute becomes only partially effective in providing relief to payees of lost or stolen checks. Congress designed section 562 "to relieve the inequitable condition" caused whenever a third party cashes a lost or stolen Treasury check, thereby depriving the payee of the proceeds until the third party or the bank reimburses him. Congress noted the importance of providing an expeditious mechanism for recovering lost proceeds: "The payees involved are not only entitled to the funds but many of them, including recipients of emergency relief funds, are greatly in need of immediate payment." H.R.Rep. No. 1113, 77th Cong., 1st Sess. 2 (1941). Payees suffer the same hardship regardless of whether the person cashing the lost or stolen check signed his own name to it on behalf of the payee, or only signed the payee's name. Following the common-law notion of forgery would introduce arbitrary distinctions unrelated to the underlying remedial objectives of section 562.

■ The explanations offered by Congressman McGehee, chief sponsor of section 562, also suggest that forgery should be construed in a manner broader than its common-law sense. Statements by a bill's sponsors, while not conclusive concerning its meaning, *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), can provide valuable insights concerning its scope. *Lewis v. United States,* 445 U.S. 55, 63, 100 S.Ct. 915, 919, 63 L.Ed.2d 198 (1980). In one instance, Congressman McGehee concurred with a fellow member's interpretation of the bill as including the theft and deposit of a check already endorsed by the payee. 87 Cong. Rec. 7646 (6 Oct. 1941). Inasmuch as the integrity of the instrument would not be compromised in this situation, it would not be "forged" in the common-law sense. Additionally, when asked whether the bill applied generally or only in special cases, Congressman McGehee responded: "[i]t is of general application, where checks are lost." 87 Cong.Rec. 1941 (21 Oct. 1941).

Finally, the manner in which several states have responded to the anomalous results which are caused by a narrow common-law interpretation of "forgery" within a remedial statute, also supports a broad construction of the term "forged endorse-

ment" within section 562.[3] Moreover, section 3–419 of the Uniform Commercial Code (U.C.C.) states:

(1) An instrument is converted when

(a) the drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) any person to whom it is delivered for payment refuses on demand either to pay or return it; or

(c) it is paid on a forged endorsement.

In light of the remedial nature of common-law conversion and the general equity principles which section 1–103[4] directs courts to consider in interpreting the U.C.C., courts have recognized that the narrow scope of common-law forgery should not serve to deny relief to payees of checks cashed on unauthorized endorsements.

Thus, at least one court has construed the term "forged endorsement", to encompass unauthorized endorsements. *Van Gohren v. Pacific National Bank of Washington,* 8 Wash.App. 245, 505 P.2d 467 (Wash.App. 1973). Other state courts, while adopting the common-law definition of forgery, have relied on equity principles to incorporate unauthorized endorsements within the scope of conversions under section 3–419. *See, e.g., Salsman v. National Community Bank of Rutherford,* 102 N.J.Super. 482, 246 A.2d 162 (1968), *aff'd* 105 N.J.Super. 164, 251 A.2d 460 (App.Div.1969); *Commonwealth Federal Savings and Loan Assoc. v. First National Bank of New Jersey,* 513 F.Supp. 296 (E.D.Pa.1979) (dicta); *Aetna Gas and Sur. Co. v. Hepler State Bank,* 6

Kan.App.2d 543, 630 P.2d 721, 725 (Kan. App.1981); 2 R. Anderson, *Uniform Commercial Code,* § 3–419–4(d) (2d ed. 1971) (citing *Salsman* ). This view notes the absence of a relationship between the technical common-law distinction of "unauthorized" and "forged" endorsements and the remedial purposes underlying section 3–419. *See Salsman,* 246 A.2d 162; 2 R. Anderson, Uniform Commercial Code, § 3–419–4(a) (2d ed. 1971); Annot., 47 A.L.R.3d 537, 542 (1973).[5] In *Salsman,* the court found no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the same insofar as passing of title. *Salsman,* 246 A.2d at 167–78 (quoting, *Teas v. Third National Bank and Trust Co.,* 125 N.J.Eq. 224, 4 A.2d 64 (1939)). Similarly, the burden imposed on a payee of a lost or stolen check is identical regardless of whether it is cashed on a "forged endorsement", in *its* common-law sense, or on an unauthorized endorsement.

■ Thus, based on the broad remedial objectives which underlie section 562, the legislative history behind section 562, and the UCC's treatment of unauthorized endorsements, this court finds that such an endorsement constitutes "forgery" within section 562, despite the narrower definition provided by the common law.

The second issue presented by the government's summary judgment motion is whether the taxpayer's use of her law firm's address on the federal estate tax return gave the firm apparent authority to

---

**3.** Construction of section 3–419 is significant insofar as the U.C.C. embodies federal commercial law. *See, e.g., In re King-Porter Co.,* 446 F.2d 722 (5th Cir.1971); *In re Humboldt Fir, Inc.,* 426 F.Supp. 292 (N.D.Cal.1977), *aff'd* 625 F.2d 330 (9th Cir.1980).

**4.** Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
USCC § 1–103. Supplementary General Principles of Law Applicable.

**5.** Anderson summarizes the general rule:

If the instrument is paid on an unauthorized indorsement, such act of payment is a conversion. That is to say, Code § 3–419 is to be interpreted so that payment under an unauthorized signature is a conversion even though the signature may not be a technical forgery, for the reason that with respect to the transfer of title there is no difference between a forgery and an unauthorized indorsement.

2 R. Anderson, Uniform Commercial Code § 3–419: 4(d) at 1034–35 (2d ed. 1971).

endorse the draft, thereby precluding forgery.

Whenever an agent signs under his authority to endorse an instrument, no forgery exists under section 562. *Duden v. United States,* 199 Ct.Cl. 668, 467 F.2d 924 (1972). A principal may give his agent express authority only by express form of communication. Restatement (Second) of Agency § 7 (1958). An agent has implied authority to perform those acts necessary for him to exercise his expressed authority. *Id.* at 35; *see Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 692, 69 S.Ct. 1457, 1462, 93 L.Ed. 1628 (1949). For example, the Secretary of Interior has the power under the *Boulder Canyon Project Act,* 43 U.S.C.A. § 617 *et seq.,* to allocate certain river water because his express grant of authority to "make contracts normally includes the power to choose with whom and upon what terms the contracts will be made." *Arizona v. California,* 373 U.S. 546, 580, 83 S.Ct. 1468, 1487, 10 L.Ed.2d 542 (1963).

Apparent authority differs from express authority because it does not result from the principal's actual grant of authority. Instead, apparent authority is that which, "the principal permits the agent to exercise or which he holds [the agent] out as possessing." S. Williston, *A Treatise on the Law of Contracts* §§ 277, n. 11. (W. Jaeger 3d ed. 1959 and 1982 Supp.); *see* Restatement (Second) of Agency § 8 (1958). A principal whose actions have given a third party reasonable grounds for assuming that an agent has certain authority is estopped from pleading the agent's lack of authority. *Schimmelpennich v. Bayard,* 26 U.S. (1 Pet.) 264, 290, 7 L.Ed. 138 (1828); *see Bronson's Executor v. Chappell,* 79 U.S. (12 Wall.) 681, 683, 20 L.Ed. 436 (1870); *Masuda v. Kawasaki Dockyard Co.,* 328 F.2d 662, 665 (2d Cir.1964).

Determining whether apparent authority exists in the case at bar, therefore requires scrutiny of the principal's behavior in the relationship with her agent. *See, Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.,* 414 F.2d 750, 756 (9th Cir.1969);

*General Overseas Films, Ltd. v. Robin Intern., Inc.,* 542 F.Supp. 684, 689 (S.D.N.Y. 1982).

Two situations commonly give rise to finding that an agent has apparent authority. In the first, an agent who repeatedly performs a function for his principal, has apparent authority because of his principal's continued acquiescence. *See, e.g., Truscon Steel Co. v. Cooke,* 98 F.2d 905 (10th Cir.1938); *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (Pa.Super. 1973); *National Homes, Inc. v. City Plumbing and Heating Supply,* 108 Ga.App. 519, 133 S.E.2d 416 (Ga.App.1963). Thus, an agent who repeatedly endorses instruments on behalf of his principal, has apparent authority to endorse. *McMurray v. Rhode Island, Inc.,* 117 A.2d 114 (D.C.1955); *Keane v. Pan American Bank,* 309 So.2d 579 (Fla. Dist.App.1975). Because the government concedes, for the purposes of this motion, that the law firm's endorsement of plaintiff's tax refund check was an isolated event, no justification exists for finding apparent authority on the basis of a regular activity by the agent.

A second possible ground for finding apparent authority is a close relationship between the unauthorized act and the agent's express authority, from which a third party could reasonably infer the agent's authority to commit the unauthorized act. *See e.g., Mechanical Wholesale, Inc. v. Universal-Rundle Corp.,* 432 F.2d 228 (5th Cir.1978); *Kamen and Co. v. Ashkar and Co.,* 382 F.2d 689 (9th Cir.1967); *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1976); Restatement (Second) of Agency § 27, comment "a" (1957). In this regard, the authority an agent ordinarily exercises becomes significant. This court must determine, therefore, whether the government could reasonably assume that a law firm designated to receive a check on behalf of a client has endorsement authority.

It is a well-established principle that the authority to receive and hold negotiable instruments on behalf of a client does not create *per se* apparent authority to en-

dorse. *See, e.g., Bogue Electric Mfg. Co. v. Coconut Grove Bank,* 269 F.2d 1 (5th Cir. 1959); *Wagner v. Nichols,* 5 A.D.2d 191, 170 N.Y.S.2d 542 (1958); *Guillory v. Braswell Motor Freight Lines, Inc.,* 256 So.2d 646 (La.App.), *cert. denied,* 260 La. 1134, 258 So.2d 381 (1972). Therefore, authorizing an attorney to receive checks on behalf of his client does not, by and of itself, bestow upon an attorney endorsement authority. *See, e.g., Moran v. Loeffler-Greene Supply Co.,* 316 P.2d 132 (Okl.1957); *Pearcy v. First National Bank,* 167 Kan. 696, 208 P.2d 217 (1949); *Central Trust Co. v. Hahn-Jacobson Co.,* 4 Ohio Op. 509, 33 N.E.2d 388 (Oh.App. 1935).

Moreover, this principle applies in circumstances virtually identical to those in the case at bar. *Gilbert v. United States,* 291 F.2d 586 (9th Cir.1961), *rev'd on other grounds,* 370 U.S. 650, 651, 82 S.Ct. 1399, 1400, 8 L.Ed.2d 750 (1962). In *Gilbert,* the United States Court of Appeals for the Ninth Circuit held that an accountant's express authority, pursuant to a written power of attorney, to file his client's federal tax return and to receive refunds, did *not* bestow upon him authority to endorse the checks. The clear import of the *Gilbert* decision, therefore, is that the plaintiff's use of her law firm's address on the estate tax return could not be viewed as giving the law firm endorsement authority. In addition, Treasury Regulations in effect when the plaintiff filed the estate return described the authority a client could delegate pursuant to a power of attorney. Among the options listed were: "receipt (but not endorsement and collection) of a check in payment of any refund of Internal Revenue taxes, penalties or interest." 26 C.F.R. § 601.502(c)(1)(i) (1974). Indeed, a special power-of-attorney form had to be executed in order to allow an agent to endorse a refund check. *Id.* Thus, the Treasury Department itself required a special and separate form for endorsement authority, as opposed to the mere authority to receive a tax refund check.

■ The rule is well recognized that an attorney's authority to receive a negotiable instrument, by itself, does not give him authority to endorse it. This rule is reflected in the power-of-attorney forms developed by the Internal Revenue Service itself. Finally, logic also supports the contention that the legal authority to receive a client's tax refund check does not necessarily entail the authority to endorse it. Moreover, it would be anomalous for this court to prevent an innocent victim of forgery from recovering under the check forgery insurance fund, merely because she directed the Internal Revenue Service to send the check to a law firm, particularly in view of section 562's remedial nature. Therefore, by solely using the law firm's address on her return, plaintiff did not bestow upon the law firm apparent authority to also endorse the Treasury check, and consequently, is not precluded from asserting the law firm's alleged forgery.

An analysis of well-established-common-law principles of agency, in light of the remedial nature of section 562, indicates that the law firm did not have apparent endorsement authority.

■ Whether plaintiff did more than designate the law firm's address on her return is an issue to be resolved at trial. Further, this court is presently not addressing the issue of whether plaintiff properly designated her law firm to receive the refund check, or speculating as to the extent of her relationship with the law firm—facts which might demonstrate whether the plaintiff breached a duty that would establish her fault under section 562.

The government conceded for the purposes of this motion that the plaintiff had no reason to doubt the law firm's integrity and that, therefore, using its address was not negligent. Nevertheless, the government asserts that this court should construe the term "fault" to include plaintiff's actions. The assertion rests on the general equitable principle that a person who entrusts a negotiable instrument to one who subsequently forges a special endorsement bears the risk of loss. Restatement (Second) of Agency § 178(2) (1958).

By merely designating the law firm's address on her return, plaintiff was not at "fault" within the term's ordinary meaning. The ordinary meaning of "fault," employed under various federal and state statutes, connotes carelessness or failure to satisfy a duty. *See, e.g., Patrick v. Pennsylvania,* 41 Pa.Cmwlth. 238, 398 A.2d 1095 (Pa.Cmwlth. 1979); *Graham v. Graham,* 44 Ill.App.3d 519, 3 Ill.Dec. 141, 358 N.E.2d 308 (Ill.App. 1976); *Williams v. Louisiana Machinery Co., Inc.,* 387 So.2d 8 (La.App.1980).

Construction of a statute *in pari materia* provides guidance in statutory construction. Section 204(a) of the Social Security Act, 42 U.S.C. § 404(a) (1976), provides *inter alia* for the government's recovery of overpaid social security benefits only when the recipient is "without fault." Under that statute, a person who acts prudently is *not* at fault for overpayment. *Kilby v. Ribicoff,* 198 F.Supp. 184 (E.D.Pa.1961); *United States v. Blackwell,* 238 F.Supp. 342 (W.D.S.C.1965). Likewise, section 562 conditions a claimant's rights upon a showing that he is "without fault." Therefore, interpreting "without fault" under the Social Security Act as referring only to situations involving a failure to perform a duty, suggests that section 562 should be construed similarly.

The interpretation of "fault", as advocated by the government, conflicts with the term's ordinary meaning and the remedial purpose underlying section 562, which should be construed "to *further* its primary purpose." *Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980) (Emphasis supplied). Plaintiff's assertion, that "fault" under section 562 refers to bad faith, also lacks support because she relies on dicta. *Koch v. Secretary of H.E.W.,* 590 F.2d 260, 262 (8th Cir.1978) (dicta). Thus, because no support exists in the statute itself or in its legislative history for either limitation, this court finds that the term "fault" should be construed as deviation from prudence or failure to satisfy a duty.

## CONCLUSION

For the above stated reasons, this court concludes that plaintiff's tax refund check was negotiated and paid by the Treasurer of the United States on a forged indorsement of plaintiff's name and that plaintiff was not necessarily at fault for having her tax refund check forwarded to her attorney's address. Therefore, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.