102 N.J. Super. 482 (1968)
246 A.2d 162
ELIZABETH A. SALSMAN (FORMERLY ELIZABETH A. ODGERS) INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ARTHUR J. ODGERS, DECEASED, PLAINTIFF,
v.
NATIONAL COMMUNITY BANK OF RUTHERFORD, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
HAROLD BRESLOW AND THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 7, 1968.
*486 Mr. James L.R. Lafferty and Mr. James L. McKeon, Jr. for the plaintiff (Messrs. Lafferty, Rowe, McMahon & McKeon, attorneys).
Mr. William R. Morrison for defendant (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. Louis Auerbacher, Jr. for third-party defendant The Fidelity and Casualty Company of New York.
BOTTER, J.S.C.
Plaintiffs, payee and special indorsee of a check, sue defendant collecting bank for applying the proceeds of the check to the account of an attorney, Harold Breslow, who improperly indorsed the check. The parties have waived trial by jury and have submitted to the court the issue of defendant's liability based upon various stipulations, depositions, affidavits and admissions. Defendant has sued third-party defendants Harold Breslow, who has defaulted, and The Fidelity and Casualty Company of New York, for indemnification on a bond. The third-party action is not presently before the court.
In May 1965 plaintiff Elizabeth A. Odgers (now Elizabeth A. Salsman) retained an attorney, Harold Breslow, to handle matters arising out of the death of her husband, Arthur J. Odgers. Breslow was recommended to Mrs. Odgers by her personal physician, Dr. S. It is stipulated that Breslow enjoyed a good reputation in the community at that time. Arthur J. Odgers had been an officer and stockholder in a company in which he had a one-third interest. He participated in the company's profit-sharing plan and had designated his wife as sole beneficiary. In payment of benefits under the plan, Mrs. Odgers received a cashier's check of the First National City Bank made out to her order in the amount of $159,770.02. The check is dated *487 August 13, 1965. Breslow then informed Mrs. Odgers that the check was not hers but belonged to the estate and that the proceeds must be held in a separate account for payment of taxes and other purposes. Mrs. Odgers was told by Breslow that the check "must be put in the estate account of Arthur Odgers." Breslow testified that at no time did he indicate or inform Mrs. Odgers that the money was to go or would go into his attorney's trust account.
Breslow wrote on the back of the cashier's check "Pay to the order of Estate of Arthur J. Odgers." He requested Mrs. Odgers to indorse the check in this fashion, and she did so. Under this special indorsement, when he was no longer in the presence of Mrs. Odgers, Breslow wrote, "Estate of Arthur J. Odgers  for deposit Harold Breslow, Trustee." Under this purported indorsement Breslow's secretary then wrote, "For deposit Harold Breslow Trustee." Mrs. Odgers had no knowledge of the subsequent indorsements. The check was then sent by mail to defendant National Community Bank of Rutherford for collection, and the proceeds were collected and deposited in Breslow's' general trustee account. Defendant bank did not inquire into the authority of Breslow to indorse the checks for the estate. There was no estate account in defendant's bank, although Mrs. Odgers had qualified as administratrix of the estate on July 9, 1965.
From August 1965 until March 1966 Mrs. Odgers inquired of Breslow on many occasions as to the status of the profit-sharing funds. She was anxious to have the funds invested so that she could use the income for current expenses. Breslow put her off with a variety of delaying tactics and misrepresentations. Ultimately he told her the funds were invested in Treasury notes. As time passed Mrs. Odgers became more suspicious and began to investigate the disposition of the funds. In March 1966 she called defendant bank to get information concerning the alleged Treasury notes. The bank advised her that there was no record of an account for the estate of Arthur J. Odgers. Mrs. Odgers then contacted another attorney and he assisted her in further *488 investigation. She obtained a copy of the original check from the First National Bank in New York City. She took the check to several lawyers for their advice. An appointment was then made with Breslow for March 30. On that date, at his office, Breslow confessed to Mrs. Odgers and her present husband, Salsman, that he had appropriated the funds to his own use, but that he had some money left in his account. They immediately took Breslow to defendant bank where he paid over to Mrs. Odgers funds which were still in his account. Later that day Mrs. Odgers and Salsman went to Salsman's attorney who called defendant concerning the matter. Attached to exhibit DN-1 is a copy of a letter dated April 1, 1966 sent by an attorney on behalf of Mrs. Odgers to defendant demanding reimbursement of the funds received on collection of the check. Mrs. Odgers was also advised to file a criminal complaint against Breslow, and she did so promptly. Breslow has since pleaded guilty to the charge of embezzlement and misappropriation of funds (N.J.S. 2A:102-5) and is presently serving a prison sentence. He also resigned from the New Jersey Bar. In April 1966 Mrs. Odgers started an action against Breslow and on June 3, 1966 obtained a judgment in her favor. Some monies were recovered by execution on that judgment. The balance not yet recovered is $117,437.43.
Defendant bank contends that it is not liable under any provision of the Uniform Commercial Code; that Mrs. Odgers was negligent, that she ratified the acts of Breslow, and that N.J.S. 3A:41-7 exonerates the bank for any misapplication of funds by Breslow. The bank contends that Breslow had the power to negotiate the check as agent or fiduciary under N.J.S. 12A:3-117, that the bank became a holder in due course of the check, and that N.J.S. 12A:3-406 bars recovery because of the alleged negligence of Mrs. Odgers in substantially contributing to the making of an unauthorized endorsement. The bank also relies on N.J.S. 12A:3-404 to claim that Mrs. Odgers ratified the unauthorized signature of Breslow. It apparently contends *489 that Mrs. Odgers ratified the application that Breslow pretended to make of the monies, but in its brief concedes that she did not ratify his embezzlement (i.e., personal use) of the funds.
In the absence of defenses such as negligence, estoppel or ratification, the payee of a check is entitled to recover against a bank making collection from the drawee based upon a forged or unauthorized indorsement of a check. Gast v. American Casualty Co. of Reading, Pa., 99 N.J. Super. 538 (App. Div. 1968); Teas v. Third National Bank and Trust Co., 125 N.J. Eq. 224 (E. & A. 1939); Passaic-Bergen Lumber Co. v. United States Trust Co., 110 N.J.L. 315 (E. & A. 1933); Buckley v. The Second National Bank of Jersey City, 35 N.J.L. 400 (Sup. Ct. 1872). This has been the established law throughout the country and continues to be the rule in states which have adopted the Uniform Commercial Code. Gresham State Bank v. O. & K. Construction Co., 231 Ore. 106, 370 P.2d 726, 372 P.2d 187, 100 A.L.R.2d 654 (Sup. Ct. 1962); Harry H. White Lumber Co., Inc. v. Crocker-Citizens National Bank, 253 A.C.A. 423, 61 Cal. Rptr. 381 (D. Ct. App. 1967); Ervin v. Dauphin Deposit Trust Co., 84 Dauph. 280, 38 Pa. Dist. & Co.2d 473 (C.P. 1965); Mackey-Woodward, Inc. v. Citizens State Bank of Cheney, 197 Kan. 536, 419 P.2d 847 (Sup. Ct. 1966); Aetna Casualty & Surety Company v. Lindell Trust Co., 348 S.W.2d 558 (Mo. App. 1961); Saf-T-Boom Corporation v. Union National Bank of Little Rock, 236 Ark. 518, 367 S.W.2d 116 (Sup. Ct. 1963); E. Moch Co. v. Security Bank, 176 App. Div. 842, 163 N.Y.S. 277 (App. Div. 1917), affirmed 225 N.Y. 723, 122 N.E. 879 (Ct. App. 1919); Annotation, "Right of check owner to recover against one cashing it on forged or unauthorized indorsement and procuring payment by drawee," 100 A.L.R.2d 670 (1965). See also Stone & Webster Engineering Corp. v. The First National Bank & Trust Company of Greenfield, 345 Mass. 1, 184 N.E.2d 358, 99 A.L.R.2d 628 (Sup. Jud. Ct. 1962).
*490 The check in question was indorsed by the payee, Mrs. Odgers, to the order of the estate of Arthur J. Odgers. There was no valid indorsement thereafter by the estate of Arthur J. Odgers. N.J.S. 12A:3-110(1)(e) provides that an instrument may be payable to the order of "an estate, trust or fund, in which case it is payable to the order of the representative of such estate, trust or fund * * *." The check was not indorsed by the administratrix of the estate, the only person who had authority in law to indorse the check. Breslow was not a trustee of the estate, and the purported indorsement for the estate by "Harold Breslow, Trustee" was unauthorized and ineffective. Breslow testified that he never told plaintiff that he would act as her agent. His purported indorsement was not authorized as the agent for the administratrix nor as a representative of the estate. See N.J.S. 12A:1-201 (35) and N.J.S. 12A:3-403. In Teas v. Third National Bank and Trust Co., supra, 125 N.J. Eq., at p. 227, similar indorsements were made. The checks in that case were payable to the order of Rutherford Teas, ancillary executor, and to the order of the estate of Elizabeth M. Teas. The checks were indorsed by the attorney for the estate in the name of the payee followed by "Joseph H. Carr, atty." The attorney, Joseph H. Carr, had also signed his own name individually under that indorsement. The court held that the indorsements were unauthorized and that the depositary, collecting bank was liable to the executor. In Passaic-Bergen Lumber Co., supra, the court held that a rubber stamp indorsement of the name of plaintiff corporation was an unauthorized indorsement where it was applied to a check by a branch manager of the corporation whose by-laws required all checks to be signed by a treasurer and a vice-president. The check in question was thereafter indorsed and deposited to the credit of another corporation controlled by the branch manager. The court held the depositary bank liable to the plaintiff on the ground that the unauthorized indorsement did not pass title to the checks.
*491 The check in question could not be negotiated without an authorized indorsement of the special indorsee, the estate of Arthur J. Odgers. N.J.S. 12A:3-202(1) and 204(1). N.J.S. 12A:3-404(1) provides that "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it * * *." There is no evidence in this case which shows a ratification by Mrs. Odgers of the conduct of Breslow; there has been nothing shown to preclude her from denying the indorsements in question, and there is no evidence of any negligence on her part which contributed to the misapplication of the funds. See Gast v. American Casualty Co. of Reading, Pa., supra; Passaic-Bergen Lumber Co., supra, 110 N.J.L. at pp. 318-319; Uniform Commercial Code, N.J.S. 12A:3-404, comment 3, and N.J.S. 12A:3-406. In the Passaic-Bergen Lumber Co. case, supra, the court held that to constitute ratification the person to be bound must, with full knowledge of all the material facts, express an intent to ratify the unauthorized acts or transactions. Upon discovery of Breslow's fraud Mrs. Odgers took prompt action against him and gave prompt notice to the bank. Ratification has not been shown here. See Teas case, supra, 125 N.J. Eq., at p. 229.
Mrs. Odgers had relied upon an attorney who was then reputable. She followed his instructions and was not negligent in assuming that the check would be deposited into the estate account after she had indorsed it to the order of the estate. Mrs. Odgers was educated and intelligent. From this, however, we cannot infer that she knew that the check would be indorsed by the attorney on behalf of herself as administratrix of the estate. N.J.S. 12A:4-205 empowers a bank to supply a missing indorsement of its customer in order to deposit a check in the account of that customer. Under that section a check is deemed indorsed when a depositary bank states on the check that it was deposited by a customer or credited to his account. Although she had not signed signature cards as administratrix in order to open *492 such an account, Mrs. Odgers cannot be held negligent on the theory that she should have suspected that the check might not have been deposited in an estate account. Mrs. Odgers made repeated inquiries concerning the funds and was given various explanations by Breslow as to their disposition and as to her inability to deal with them at that stage in the administration of the estate. Her conduct was not unreasonable or imprudent.
Receiving the funds without a proper indorsement and crediting the funds to one not entitled thereto constitutes a conversion of the funds. A holder is one who receives an instrument which is indorsed to his order or in blank. N.J.S. 12A:1-201 (20). The bank cannot be a holder, or a holder in due course (N.J.S. 12A:3-302), without a valid indorsement of this check by the estate of Arthur J. Odgers. Stone & Webster Engineering Corp., supra. N.J.S. 12A:3-419(1)(c) provides that an instrument is converted when it is paid on a forged indorsement. N.J.S. 12A:1-201(43) provides that an unauthorized signature or indorsement is one made without authority (actual, implied or apparent) and includes a forgery. See the Teas case, supra, where the court in 125 N.J. Eq., at p. 227 said: "There is no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the same in so far as concerns the passing of title." The use of the word "forged indorsement" as constituting a conversion under N.J.S. 12A:3-419(1) does not preclude the finding of conversion where the unauthorized signature does not constitute a forgery in the strict sense. If the Uniform Commercial Code fails expressly to include unauthorized indorsements other than forgeries in this conversion section, the law may reach the same result by implication from the Code and by general principles. See N.J.S. 12A:1-103, which provides: "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant * * * or other validating or invalidating cause shall supplement its provisions." See Stone & *493 Webster Engineering Corp., supra. See also 1 Anderson's, Uniform Commercial Code, § 3-419.3, p. 688 (1961), where the author states that the enumeration by the Code of specific acts constituting a conversion is not exclusive and the general principles of law relating to conversion of property remain in force, citing § 1-103.
N.J.S. 12A:3-419(3) clearly implies the liability of a depositary or collecting bank in conversion when it deals with an instrument or its proceeds on behalf of one who is not the true owner, where the bank does not act in accordance with "reasonable commercial standards." Defendant did not act in accordance with reasonable commercial standards. See Gresham State Bank v. O & K Construction Co., supra, where the court judicially noticed that reasonable commercial standards of a businessman requires an inquiry as to an agent's authority to make an indorsement of a check, although the duty to inquire is not absolute, and one may rely upon apparent authority. In the Teas case, supra, the Court of Errors and Appeals held (125 N.J. Eq., at p. 228) that a depositary bank was derelict in its duty to the check's payee in failing to inquire as to an attorney's right to indorse the check and place the proceeds in his own account to his own credit. The court held that the form of the checks, payable to an executor and to an estate, put the bank on notice that the attorney had no power to do what he did, and that the bank's breach of its duty to make appropriate inquiry rendered it liable to the payee. In Slavin v. Passaic National Bank and Trust Co., 114 N.J.L. 341 (E. & A. 1935), the court held a bank liable to a payee for accepting an unauthorized indorsement of the priest-treasurer of a church corporation without inquiring as to his authority to make the indorsement.
It may be noted also that the defense of negligence substantially contributing to the making of an unauthorized signature (N.J.S. 12A:3-406) has been held unavailable to one who pays an instrument under circumstances which do not conform to reasonable commercial standards of the *494 payor's business, such as the failure to make inquiry as to the authority to indorse. Gresham State Bank case, supra. Section 3-406 provides that one whose negligence substantially contributes to the making of an unauthorized signature is precluded from asserting the lack of authority against a holder in due course or drawee or other payor "who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."
In the present case there are sufficient facts to justify the conclusion that defendant bank is liable regardless of how we view the conduct of Mrs. Odgers in giving the check to Breslow. The bank was negligent in allowing funds to be deposited in Breslow's attorney's trust account without inquiry as to his authority to indorse the check as trustee on behalf of the estate. There were no circumstances to suggest any apparent authority in Breslow to do this. Moreover, the indorsement purportedly made on behalf of the estate was a "for deposit" indorsement, a restrictive indorsement. N.J.S. 12A:3-205(c). This is another fact which should have alerted the bank to a misapplication of the funds.
N.J.S. 12A:3-206(3) requires a depositary bank to apply the proceeds of the check in a manner which is consistent with a restrictive indorsement. Uniform Commercial Code, N.J.S. 12A:3-205, comment 2; New Jersey Study, comments 1 and 5, and Uniform Commercial Code N.J.S. 12A:3-206, comment 5. See also N.J.S. 12A:3-603(1)(b) which provides that a depositary bank is not discharged from liability where payment of an instrument is made in conflict with the terms of a restrictive indorsement. N.J.S. 12A:3-419(3) and (4) clearly imply liability in conversion when a depositary bank fails to honor a restrictive indorsement, even though made by a party who is not that bank's immediate transferor. See also N.J.S. 12A:4-205(2), which implies that a depositary bank is deemed to have notice of a restrictive indorsement by an indorser who is *495 not the bank's immediate transferor. Thus, even if the indorsement for the estate had been authorized, defendant bank would be liable for failing to deposit the proceeds to the credit of the estate as required by that indorsement.
Defendant bank contends that plaintiff must elect to sue in her own name, as payee of the check, or in her name as administratrix of the estate, the special indorsee. This court, however, need not determine whether the proceeds of the profit-sharing plan should have been paid to Mrs. Odgers individually, as the designated beneficiary, or to the estate. Defendant has no appropriate concern with that choice. The check was made payable to Mrs. Odgers and was indorsed by her to the estate. Both Mrs. Odgers and the estate have sufficient interest in the proceeds to bring this action, and the bank is liable to both. On payment of the loss to plaintiffs jointly it will be up to Mrs. Odgers and the estate to determine the proper disposition of the funds.
Other statutory provisions relied upon by defendant are patently inapplicable. The bank contends that N.J.S. 3A:41-9 of the Uniform Fiduciaries Law protects it against misapplication of funds by Breslow. But to exonerate the bank it must be shown that Breslow came into possession of the funds as a fiduciary. In referring to the indorsement of checks by a fiduciary the statute expressly provides, "if he is empowered to indorse such checks." Since Breslow had no right to the funds, was not a fiduciary of the estate and was not authorized to indorse checks on behalf of the estate, the bank cannot claim the protection of this statute. Cf. Strong v. City National Bank of Philadelphia, 355 Pa. 390, 50 A.2d 323 (Sup. Ct. 1947). Murner v. First National Bank of Passaic County, 94 N.J. Super. 293 (App. Div. 1967), is distinguishable. There a testamentary trust had been established under the will of Charles Nazzaro, deceased, and trust accounts had been opened in the name of a trustee of the estate. In those circumstances the court held that the bank was protected against the alleged misappropriation of the testamentary trustee. In the case at hand decedent *496 died intestate. Neither Breslow nor Mrs. Odgers was a trustee of the estate. There was no testamentary trust, and no trust account had been established at defendant bank.
As noted above, the bank has made claim on a bond issued by third-party defendant The Fidelity and Casualty Company of New York. The bond covers losses to the bank through forgery of a check and other causes not relevant here. A motion for summary judgment has been brought in that action following receipt of my letter opinion in this primary action. The bank there contends that if Breslow's indorsement was unauthorized, it constitutes a forgery within the broad definition of that term. See State v. Berko, 75 N.J. Super. 283, 290-291 (App. Div. 1962). It has been noted that there was no trustee of the estate of Arthur J. Odgers, although Breslow pretended by his signature to be such a trustee. The narrow definition of forgery is said to be the false making or alteration of an instrument in writing with intent to defraud so as to make it appear to be that of one other than the person actually making it. State v. Berko, supra. The broad definition of forgery is said to apply in the majority of jurisdictions. That definition is the false making of any writing in a fictitious or assumed name. Forgery has also been defined as the false making of any writing which, if genuine, might apparently be of legal efficacy. Ibid.; State v. Ruggerio, 43 N.J. Super. 156, 159 (App. Div. 1956), affirmed 25 N.J. 292 (1957); Annotation, "Forgery: use of fictitious or assumed name," 49 A.L.R.2d 852 (1956). Thus, the signature of Breslow as a fictitious trustee may be held to be a forgery which would obligate the bank to plaintiffs for conversion under N.J.S. 12A:3-419(1)(a). However, because argument has not yet been heard on the motion for summary judgment in the third-party action, I have not decided whether Breslow's signature as "trustee" of the estate constitutes a forgery within the meaning of the Uniform Commercial Code or the bond. It is sufficient to hold that the bank is liable for paying the instrument on an unauthorized indorsement, whether *497 or not a forgery; that the alleged negligence of Mrs. Odgers cannot excuse the bank, since the bank did not comply with the reasonable standard of making inquiry into Breslow's authority to sign for the estate as a trustee; that, in any case, Mrs. Odgers was not negligent, and that even if the indorsement had been authorized the bank is liable for violating a restrictive indorsement.
For the foregoing reasons judgment shall be entered in favor of plaintiffs against defendant bank in the sum of $117,437.43, plus interest and costs.