458 So.2d 1370 (1984)
CONFEDERATE WELDING AND SAFETY SUPPLY, INC., Plaintiff-Appellee,
v.
BANK OF THE MID-SOUTH, Defendant-Appellant.
No. 16502-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
Writ Denied February 4, 1985.
*1372 Bodenheimer, Jones, Klotz & Simmons by F. John Reeks, Shreveport, for plaintiff-appellee.
Rogers & Harlow by Graham W. Rogers, Bossier City, for defendant-appellant.
*1373 Before HALL, FRED W. JONES, J. and SEXTON, JJ.
SEXTON, Judge.
Confederate Welding and Safety Supply, Inc. instituted suit against the Bank of the Mid-South to recover the proceeds of two checks on which Confederate is the payee. Bank of the Mid-South appeals an adverse judgment. We affirm.
Plaintiff Confederate Welding was at the time of the receipt of the checks a corporation whose stock was owned equally by two shareholders, Jerry Wayne Johnson, Sr. and Robert L. Armstrong. Johnson, who was secretary-treasurer of the corporation, was employed by the corporation as a salesman and worked out of the office much of the time. Armstrong was the office manager and bookkeeper. Additionally, he was president of the corporation. The corporate bank account was with Commercial National Bank. Armstrong had his personal bank account with Bank of the Mid-South.
On October 28, 1981, Armstrong went to Bank of the Mid-South and deposited into his personal banking account a check in the amount of $26,065.26, made payable to "Confederate Welding and Safety" and drawn on the account of Amerigas. Shortly thereafter, on November 4, 1981, Armstrong deposited a second check made payable to "Confederate Welding and Safety Supply" into his personal checking account. This check, in the amount of $3,539.24, was drawn on the account of Sawyer Drilling and Service, Inc. In each instance, Armstrong endorsed the check in his handwriting exactly as the check was made payable, then signed his name, R.L. Armstrong. On both occasions when the check was presented the same vice-president of the Bank of the Mid-South was contacted for approval of the deposits.
Armstrong subsequently depleted his personal checking account to the amount of $404.44. Confederate sought recovery against the depository bank, Bank of the Mid-South, claiming that the bank paid the instrument over an unauthorized endorsement, and as such was liable to Confederate, the true owner of the proceeds. The bank resisted, claiming that Confederate was precluded from asserting this claim because they were negligent in a manner which substantially contributed to the making of the unauthorized endorsement. The bank further alleged the affirmative defenses of laches, estoppel, and satisfaction of the debt. The bank additionally claims that the makers of the checks, Amerigas and Sawyer Drilling, are indispensable parties to this litigation.
LSA-R.S. 10:3-419, in pertinent part provides:
§ 3-419. Willful refusal to accept or pay; payment on a forgery; innocent representation
(1) When a drawee to whom an instrument is delivered for acceptance refuses to return it on demand; or when a person to whom an instrument is delivered for payment refuses on demand either to pay or to return it; or when a person pays an instrument on a forged indorsement, he is liable to the true owner.
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
In this instance, plaintiff makes no claim that the signature was forged but claims that Armstrong's endorsement for deposit into his personal checking account was outside the scope of his authority as an agent of the corporation. We must determine then whether a forged endorsement for purposes of LSA-R.S. 10:3-419 encompasses an unauthorized endorsement.
An "unauthorized" signature or endorsement means one made without actual, implied or apparent authority and includes a forgery. LSA-R.S. 10:1-201. The Third Circuit has indicated in dictum that the definition contained in LSA-R.S. 10:1-201 indicates that an unauthorized signature should be encompassed by the term forgery *1374 for purposes of LSA-R.S. 10:3-419. Top Crop Seed and Supply Co., Inc. v. Bank of Southwest Louisiana, 392 So.2d 738 (La.App. 3d Cir.1980). Such a finding is implicit in their ruling in Pargas v. Estate of Taylor, 416 So.2d 1358 (La.App. 3rd Cir.1982), discussed infra. Other jurisdictions have held that Section 3-419(1) applies to a situation where the signature is not forged but is instead a signature by one who exceeded his authority by so endorsing. The argument that the Uniform Commercial Code distinguishes between a forgery and an unauthorized signature and that without a "forgery" there can be no action under 3-419(1) has been rejected. See generally, Aetna Casualty and Surety Co. v. Hepler State Bank, 6 Kan.App.2d 543, 630 P.2d 721 (1981); Equipment Distrib. v. Charter Oak Bank, etc., 34 Conn. Supp. 606, 379 A.2d 682 (1977); Hartford Accident and Indemnity Co. v. S. Windsor Bank and Trust Co., 171 Conn. 63, 368 A.2d 76 (1976); Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162 (1968), affirmed 105 N.J.Super. 164, 251 A.2d 460 (1969). We find the reasoning of these cases to be persuasive on this point and conclude that § 3-419 is available in the case of an unauthorized endorsement.
The bank argues that Armstrong had the requisite authority to endorse corporate checks. It claims that if an inquiry as to his authority had been made by the officer who approved the transaction, this authority would have been revealed.
Robert L. Armstrong was authorized by corporate resolution to endorse checks for deposit into the corporate banking account. However, the resolution on file at Commercial National Bank, as well as the resolution contained in the corporate minute book, make it abundantly clear that Armstrong was only authorized to endorse corporate checks for deposit into the corporate account at Commercial National Bank.[1] We therefore conclude that Armstrong *1375 did not have actual authority to endorse corporate checks for deposit into his personal account.
Neither are we able, under the facts of this case, to find that Armstrong had implied authority which would justify the actions of Bank of the Mid-South. Apparent authority is a doctrine created by the courts to protect persons dealing in good faith with corporate officials where the corporation has taken such action or inaction as to justify a belief that the official has acted with authority. The doctrine has two requirements: (1) the principal must make some form of manifestation to an innocent third party; and (2) the third party must rely reasonably on the proported authority of the agent as a result of the principal's manifestations. Lilliedahl & Mitchel v. Avoyelles Trust and Savings, 352 So.2d 781 (La.App. 3rd Cir.1977); Krautkramer Ultrasonics, Inc. v. Port Allen Marine Service, Inc., 248 So.2d 336 (La.App. 4th Cir.1971).
The bank officer who authorized the deposits in question testified that he had known Armstrong for approximately three to four years on a casual, social basis during which time he played golf with Armstrong two to three times a month. He stated that he was unaware of the legal status of Confederate Welding, i.e., whether it was a corporation, sole proprietorship, or partnership. He stated that Armstrong had given him the impression that he "ran the show" at Confederate Welding and had the authority to conduct the entity's financial affairs. The officer further testified that he did not have any dealings with any other officers, members of the board of directors, or shareholders of Confederate Welding who indicated that Armstrong had authority to deposit corporate checks into his personal bank account. Considering this testimony, it is obvious that Confederate Welding, Armstrong's principal, made no manifestation of Armstrong's authority to Bank of the Mid-South. It is equally obvious that any appearance of Armstrong's authority came solely from Armstrong himself. Thus, the bank officer's reliance on this appearance of authority was unreasonable. It is well-established that the mere fact that an employee has managerial status and is in charge of a company's office does not entitle third persons to assume that he had the authority to execute or endorse negotiable paper belonging to his employer. Guillory v. Braswell Motor Freight Lines, Inc., 256 So.2d 646 (La.App.2d Cir.1972), writ denied, 260 La.1134, 258 So.2d 381 (1972). Thus, we conclude that Armstrong had neither actual nor apparent authority to conduct this transaction. His signature on the check was therefore unauthorized. Bank of the Mid-South is consequently liable to Confederate for the face value of the checks under LSA-R.S. 10:3-419 unless Confederate Welding is estopped from asserting the unauthorized nature of Armstrong's signature.
The defendant bank claims that Confederate was negligent in failing to supervise the lax bookkeeping practices by Armstrong which allowed him to embezzle funds from the corporation. All corporate checks required the signatures of both Mr. Johnson and Mr. Armstrong. However, Mr. Armstrong was in charge of paying the bills and on many occasions Mr. Johnson would sign ten to fifteen checks in blank in order for Mr. Armstrong to do so. This was one of the methods used by Mr. Armstrong to embezzle money from the corporation, which amounted to approximately $130,000.00 over a one year period.
*1376 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with reasonable commercial standards of the drawee's or payor's business. LSA-R.S. 10:3-406.
Comment 6 under this section note that Section 3-406 protects parties who act not only in good faith but also in observance of the reasonable standards of their business. Thus, any bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel afforded by this Section. Therefore, before Bank of the Mid-South can avail itself of the preclusion of LSA-R.S. 10:3-406, it must prove that it acted within the reasonable commercial norm in allowing Armstrong to deposit checks naming Confederate as payee into his personal account.
The bank officer's testimony concerning the circumstances surrounding this deposit is pertinent in this regard. He stated that on each occasion when Armstrong approached a teller at the Bank of the Mid-South and attempted to deposit the checks into his personal account, he was contacted to verify the transactions. He stated that since he thought that Armstrong was the owner of the business with the requisite capability to conduct the financial affairs of Confederate Welding, he did not ask for, nor was he shown, a corporate resolution authorizing Armstrong to endorse checks on behalf of Confederate or to deposit checks made payable to Confederate into his personal account. In fact, as previously discussed, the officer was not even aware that Confederate Welding and Safety Supply, Inc. was incorporated. Further, Confederate maintained no business account with Bank of the Mid-South, nor had they had any other business dealings, such as business loans, with that bank. Under these circumstances, we are compelled to find that the Bank of the Mid-South did not act in accordance with reasonable banking practices in allowing these deposits without proof of Armstrong's authority.
We are supported in our conclusion by the holding in Pargas, Inc. v. Estate of Taylor, supra, a case which is factually similar to the case at bar. There, a district manager of Pargas diverted checks naming his employer as payee into his personal account. He endorsed the check with a rubber return address stamp. Some of the checks were also endorsed by his personal signature. In finding the defendant bank liable for the face value of the checks under LSA-R.S. 10:3-419, the Court stated at page 1361:
We take judicial notice of the fact that checks payable to a corporation are not normally endorsed in blank by use of a return address stamp and delivered to third parties. The collecting bank should have inquired as to the reason and authority for the deposits of corporate checks into Taylor's personal account. However, the evidence clearly shows that Rapides Bank never obtained a corporate resolution authorizing Mr. Taylor to endorse checks on behalf of Pargas nor was there any authorization received for deposit of corporate checks into Taylor's personal account. Indeed, Rapides Bank made no inquiry whatsoever. Not only does such conduct fall below reasonable commercial standards, but it also violates defendant's internal procedures which the record discloses to require bank employees to obtain a resolution from the principal prior to acceptance of such checks.
Bank of the Mid-South, then, having paid these checks in derogation of reasonable commercial standards, is not in the proper posture to preclude Confederate Welding from asserting the unauthorized character of Armstrong's endorsement. Having thus concluded, we now turn to a consideration of the affirmative defenses raised by Bank of the Mid-South.
*1377 The defendant urges the affirmative defenses of laches and estoppel, alleging that Confederate Welding did not make, demand upon Bank of the Mid-South for eleven months after the unauthorized signatures were discovered. The party asserting an affirmative defense must prove that defense by a preponderance of the evidence. McDonald v. Champagne 340 So.2d 1025 (La.App. 1st Cir.1976).
Jerry Wayne Johnson testified that Armstrong came to him in mid-November of 1981 and confessed to his embezzlement of funds from the company. Johnson immediately requested copies of the checks from Sawyer Drilling and Amerigas. After obtaining these checks, he took them to Bank of the Mid-South. There, he inquired of the bookkeeping department whether Confederate Welding had an account with that bank and was told that they did not. He then talked to two officers of the bank, one of whom was the officer who approved the deposits in question. These officers asked Mr. Johnson whether he was going to "do anything about it." Mr. Johnson responded that he would not proceed against the bank for reimbursement unless absolutely necessary. Mr. Johnson then advised the bank in August of 1982 that he would, due to financial reasons, be forced to proceed to secure reimbursement for the proceeds of the checks and filed this suit on October 7, 1982.
Equitable estoppel is defined as the effect of voluntary conduct of a party which should preclude him from asserting rights against another because the other party has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring the party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. The general rule is that estoppel is not favored. One must affirmatively show that he was misled and acted to his prejudice in order to prevail in a defense of equitable estoppel. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); McDonald v. Champagne, supra.
In this case, there was no written agreement to forbear. Although the failure to obtain a written agreement to forbear may not be critical, it may be a factor in the court's determination of whether the doctrine of equitable estoppel applies. Commercial Bank and Trust Co. v. Canale, 450 So.2d 761 (La.App. 5th Cir.1984). Construing the evidence in a manner favorable to the bank, it simply showed that Mr. Johnson advised the bank that he would not seek legal redress unless his financial condition made this course of action absolutely necessary. Clearly, the statement made by Johnson to the officers of the bank should not have led them to believe that Confederate would perpetually forbear institution of suit. On the basis of the evidence presented, we find that Bank of the Mid-South has failed to sustain its burden of proof that it was misled by Mr. Johnson's statement, and that reliance on this statement was reasonable. Having failed to prove all of the essential elements of a plea of estoppel, the doctrine is unavailable as a defense to this claim.
Secondly, the defendant claims that Confederate Welding is barred from bringing the instant suit by laches. Two elements must be proved by defendant to establish that plaintiff was guilty of laches: (1) unreasonable delay on the part of the plaintiff in filing suit, or (2) harm that would be suffered by defendant or a third party resulting from defendant's or a third party's actions based on a reasonable assumption, occasioned by the delay, that plaintiff would not seek further legal redress. Jordan v. Sutton, 401 So.2d 389 (La.App. 1st Cir.1981).
We are unable to find that the eleven month delay in instituting suit occasioned by plaintiff was unreasonable. Moreover, we are unconvinced that the bank's assumption that plaintiff would not seek legal redress for its loss of almost $30,000 was a reasonable assumption based on Mr. Johnson's statement that he would *1378 not sue unless his financial condition forced him to do so. In so concluding, we reject defendant's claim that this suit is barred by laches.
Defendant also argues that the debt was satisfied before institution of suit because Robert Armstrong signed over his shares of stock in Confederate Welding to Jerry Johnson after discovery of the embezzlement. Defendant has failed to establish, however, that the stock had any substantial value at the time of the transfer or that the transfer was intended to forgive or release the debt of Armstrong.
Finally, Bank of the Mid-South claims that the makers of the two checks, Amerigas and Sawyer Drilling, are indispensable parties to this litigation. We disagree.
Indispensable parties to an action are those whose interest in the subject matter are so interrelated and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action. LSA-C.C.P. Art. 641. The classification of indispensable party may be applied to a party only after the facts clearly establish that no complete and equitable adjudication of the controversy can be made in its absence. State Through the Department of Highways v. Lamar Advertising of Louisiana, Inc., 279 So.2d 671 (La.1973).
LSA-R.S. 10:3-419(1) provides a direct cause of action against a party paying a check over a forged or unauthorized endorsement. In the present case, Confederate Welding seeks redress from Bank of the Mid-South for breach of that statutory duty. The sole question at issue is whether the bank breached its duty to Confederate Welding and if so, are any defenses available to the bank which would limit its liability or absolve it from responsibility.
Plaintiff may, in this case, have elected to proceed against the drawers of these checks on the theory that the checks were conditional payment for the underlying obligation which remained unsatisfied, and by this course of action forced the drawers to seek redress for their loss from the drawee bank. But, Confederate Welding has chosen to proceed instead under the provisions of LSA-R.S. 10:3-419. Bank of the Mid-South has not delineated any defense which it could assert against the drawers of these checks that would affect its liability to Confederate. We find that a complete and equitable adjudication of the controversy concerning these checks can be made absent the joinder of Amerigas and Sawyer Drilling.
The judgment of the district court is in all respects affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The following resolution is contained in the corporate minute book.

"Upon motion duly made, seconded and unanimously carried, the following resolution was adopted:
"RESOLVED, that Commercial National Bank in Shreveport be designated as a depository of this corporation and the officers are hereby instructed to open and maintain a checking account with said bank in the name of the corporation.
"BE IT FURTHER RESOLVED, that the President and any other officer be authorized to sign any and all checks, drafts and orders against any funds at the time standing to the credit of this corporation with said bank, including those drawn to the individual order of said officer signing same, and to make all documents evidencing deposit of funds with said bank, and the said bank is hereby authorized to honor checks, drafts and orders of this corporation when so signed by said officers unless and until said bank has received notice to the contrary from the corporation in writing signed by the President of the corporation, and said bank shall at all times be protected in recognizing as such officers and persons named in a certificate signed by the President of the corporation, unless and until it has received notice in writing that said officers have been changed."
The following resolution is from the files of Commercial National Bank.
"We, Robert L. Armstrong, President, and Jerry Wayne Johnson, Sr., Secretary, of Confederate Welding & Safety Supply, Inc., a corporation, duly organized and existing under the laws of the state of Louisiana, do hereby certify that the following is a true and correct copy of certain resolutions duly adopted by the Board of Directors of said corporation at a meeting thereof duly called and held on the 24th day of October, 1977, at which a quorum was present; that said resolutions have been duly entered on the Minute Book of this corporation; that the same are in conformity with the charter and by-laws of said corporation and have never been modified or rescinded:
"RESOLVED that COMMERCIAL NATIONAL BANK IN SHREVEPORT be and the same is designated as a depository of this corporation; that any officer of this corporation be and he is hereby authorized to open an account or accounts with said Bank on such terms and conditions as he may deem proper; that said Bank is authorized to accept for deposit or collection any draft or check or other instrument bearing the endorsement of this corporation, whether stamped, written, or otherwise, and with or without the designation of the person making such endorsement.
"BE IT FURTHER RESOLVED that any and all funds of this corporation in any such account or accounts may be withdrawn by check, draft, order or other instrument when signed or when bearing, or purporting to bear the facsimile signature(s) in the name of this corporation by any two of the following officers or employees, to-wit:
Robert L. Armstrong, President only and with
Jerry Wayne Johnson, Sr., Sec/Tres. either of the
Robert H. Marlowe, Store Mgr. following
And the said Bank is hereby authorized to pay such checks, drafts, orders or other instruments, and also to receive the same for the credit of or in payment from the payee or any other holder when so signed, without inquiry as to the circumstances of their issue or the disposition of their proceeds, whether drawn to cash or bearer, or to the individual order of, or tendered in payment of individual obligations of the officers or employees above named, or other officers or employees of this company, or otherwise."