GUIDRY, Judge.
Defendant, Bank of Commerce & Trust Company, Rayne, Louisiana (Bank), appeals a judgment of the trial court awarding plaintiff, South Rayne Water Corporation (SRWC), $3,575 diverted from SRWC’s checking account over a period of months plus interest and costs. We affirm.
During the years 1985 through 1989, SRWC maintained two accounts with the Bank, a checking account and a savings or surplus account. SRWC, a non-profit corporation, was required by federal regulation to keep the latter account and to deposit a predetermined sum into that account monthly. The required deposit was a percentage of the amount of a loan SRWC *159 had received from the Farmers Home Administration (FHA).
Sometime during the spring of 1988, SRWC hired an independent accountant, Joe Richard, to keep its books and take care of most of SRWC’s daily financial business. Richard was not made a signatory on either of SRWC’s accounts with the Bank, that power being reserved to Jules Simoneaux, SRWC’s president, and Arthur Veazey, a member of the board. The signatures of both Simoneaux and Veazey were required on any check issued by the corporation.
Between May 1988 and January 1989 twelve checks for $325 each were drawn to the Bank as payee. The checks were signed by Simoneaux and Veazey and delivered to Richard for deposit into SRWC’s savings or surplus account. Richard deposited the first check as intended, but diverted the next eleven checks for his personal gain. Richard did this when he discovered a Bank policy which allowed a depositor to obtain cash from his account by writing a check payable to the Bank and then, upon presentation, endorsing the instrument.[1] At trial, testimony established that the Bank felt this policy would protect depositors who wished to obtain cash from their accounts. The Bank reasoned that by having drawees make the Bank the payee, rather than have the check made out to “cash”, any lost instrument could not be negotiated by a third party. Because Richard was known to be associated with SRWC, the Bank allowed him to endorse eleven $325 checks made out to the Bank and signed by Simoneaux and Veazey and obtain $325 per check in cash, even though Richard was not a designated signatory on SRWC’s accounts and despite the fact that the Bank had not received either written or verbal authorization from SRWC for Richard to either endorse or sign SRWC checks.
Inasmuch as Richard received SRWC’s bank statements and prepared summaries of same for the officers of SRWC to review, it was not until the FHA wrote SRWC inquiring about the status of the “surplus” account that the corporation had any reason to suspect that something was amiss. At this point, SRWC engaged Jared Lawless, a CPA, to look for the “missing” funds. When Lawless’ examination discovered the diversion, Richard admitted his wrong doing. This suit followed.
The trial judge, in written reasons for judgment, stated:
Two of the bank’s employees, one of whom is the bank manager, and the other a teller, both testified that they were aware that Mr. Richard did not have authority to write checks or to withdraw funds from either account which plaintiff maintained with defendant bank. Notwithstanding, the Bank cashed the eleven checks in question which were all drawn to the order of Bank of Commerce & Trust Company for the apparent purpose of transferring these funds to the plaintiff’s escrow account.
The evidence adduced at the trial of this matter shows that Joe Richard had no authority to issue and sign checks on behalf of the plaintiff corporation. Absence of such authority should further indicate that he had no authority to endorse checks on behalf of the corporation except for the purpose of depositing the same in an account of his employer. The Court feels that the bank has failed to meet reasonable commercial standards by allowing Joe Richard to endorse and cash checks made payable to the bank.
On appeal the Bank argues that it was a “holder in due course” of the diverted checks and thus protected from liability; Joe Richard was cloaked with apparent authority to sign the checks and/or receive SRWC funds from the Bank; the Bank’s policy of allowing a drawer to make a check payable to the Bank and then receive cash by endorsing same was not below reasonable commercial standards; and, SRWC was negligent in not discovering the diversion of its funds sooner. We find no merit in any of these arguments.
Under our commercial law a holder in due course is a holder who takes an instrument for value, in good faith and without *160 notice of any defense against or claim to it on the part of any person. La.R.S. 10:3-302. La.R.S. 10:1-201 reads in pertinent part:
[[Image here]]
A person has “notice” of a fact when
(a) he has actual knowledge of it; or
(b) he has received a notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.
A person “knows” or has “knowledge” of a fact when he has actual knowledge of it.
A person “notifies” or “gives” a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.
A person “receives” a notice or notification when
(a) it comes to his attention; or
(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.
... [and]
“Unauthorized” signature or endorsement means one made without actual, implied or apparent authority and includes a forgery.[2]
The Bank’s policy, while laudable in its expressed purpose, was violative of the basic principles of negotiable instruments law in that it fostered the negotiation of instruments without the endorsement of the named payee. In this case the Bank paid the check over the endorsement of a third person who was not only not the payee, but who had no authority to withdraw funds from the drawer’s accounts, 1.e., the Bank allowed to happen the exact thing its policy was supposed to prevent.
The Bank argues that Richard had “apparent” authority to receive funds from the checks although he was not the named payee. We disagree. The Bank admits that Richard’s name was not included on the signature card for either of SRWC’s accounts and that it had received neither written nor verbal communication from SRWC which would give Richard access to the funds in either SRWC account. We agree with the trial judge that the Bank’s check cashing policy “failed to meet reasonable commercial standards”. The Bank’s policy was one which violated the basic precepts of negotiable instrument law. Thus, we find the Bank had notice that Richard’s signature on SRWC’s checks was “unauthorized” and as such was a defense against the instrument.
Not only would the Bank’s notice that Richard’s signature was unauthorized serve as a defense to the instrument and prevent the Bank from claiming “holder in due course” status, it also makes the Bank liable to plaintiff under La.R.S. 10:3-419. That statute provides in pertinent part: “... when a person pays an instrument on a forged endorsement, he is liable to the true owner”. In Confederate Welding and Safety Supply v. Bank of the Mid-South, 458 So.2d 1370 (La.App.1984), writ denied, 462 So.2d 1264 (La.1985), our brethren of the Second Circuit stated:
An “unauthorized” signature or endorsement means one made without actual, implied or apparent authority and includes a forgery. LSA-R.S. 10:1-201. The Third Circuit has indicated in dictum that the definition contained in LSA-R.S. 10:1-201 indicates that an unauthorized signature should be encompassed by the term forgery for purposes of LSA-R.S. 10:3-419. Top Crop Seed and Supply Co., Inc. v. Bank of Southwest Louisiana, 392 So.2d 738 (La.App. 3d Cir.1980). Such a finding is implicit in their ruling in Pargas v. Estate of Taylor, 416 So.2d 1358 (La.App. 3rd Cir.1982), discussed infra. Other jurisdictions have held that Section 3-419(1) applies to a situation *161 where the signature is not forged but is instead a signature by one who exceeded his authority by so endorsing. The argument that the Uniform Commercial Code distinguishes between a forgery and an unauthorized signature and that without a “forgery” there can be no action under 3-419(1) has been rejected. See generally, Aetna Casualty and Surety Co. v. Hepler State Bank, 6 Kan.App.2d 543, 630 P.2d 721 (1981); Equipment Distrib. v. Charter Oak Bank, etc., 34 Conn. Supp. 606, 379 A.2d 682 (1977); Hartford Accident and Indemnity Co. v. S. Windsor Bank and Trust Co., 171 Conn. 63, 368 A.2d 76 (1976); Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162 (1968), affirmed 105 N.J.Super. 164, 251 A.2d 460 (1969). We find the reasoning of these cases to be persuasive on this point and conclude that § 3-419 is available in the case of an unauthorized endorsement.
We find no reason to deviate from the above announced rule in the case herein.
As to SRWC’s alleged negligence, we find SRWC’s only mistake was in engaging the services of a less than honest accountant. Once the corporation received notice from the FHA that something was amiss with its surplus account, it took immediate measures to discover exactly what had happened and, after discovering the cause of its problem, expeditiously moved to take corrective action.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are taxed against appellant, Bank of Commerce & Trust Company, Rayne, Louisiana.
AFFIRMED.

. The record reflects that this policy has been changed.

. Chapter 3 of Title 10, consisting of R.S. 10:3— 301 through 10:3-807 was amended and reenacted, effective July 1, 1993, by Acts 1992, No. 1133 Sec. 3 to consist of R.S. 10:3-101 to 10:3-605.